**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Brian Dankemeyer, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case Number: |
| v. | ) | |
| | ) | |
| | ) | |
| BMO Bank, N.A., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>COMPLAINT</u>**

This is an action brought by Plaintiff Brian Dankemeyer against BMO Harris Bank ("BMO") for wrongful termination, age discrimination, and retaliation in violation of federal law. Plaintiff, a long-standing and high-performing employee, was terminated after reporting and questioning practices he reasonably believed to be improper and potentially detrimental to BMO's customers, including policies related to the handling of maturing Certificates of Deposit ("CDs") and the referral process. Plaintiff engaged in protected whistleblower activity by bringing these concerns to the attention of management and speaking up during company meetings to ensure that customers were properly notified of CD maturities. Rather than addressing Plaintiff's concerns, BMO subjected him to adverse employment actions, culminating

1

in his termination. Plaintiff seeks redress for the unlawful actions of BMO, including lost wages, emotional distress, and other damages as allowed by law.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as Plaintiff's federal claims.

2. The employment practices alleged to be unlawful were committed within the state of Illinois and within the jurisdiction of the United States District Court for the Northern District of Illinois.

## PARTIES

3. Plaintiff, Brian Dankemeyer is a resident of Illinois.

4. At all relevant times, Defendant BMO Bank, N.A. (also referred to as "Defendant" or "BMO") has continuously been doing business in the State of Illinois and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

6. At all relevant times, Defendant has been a covered entity under Title VII and IHRA.

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Brian Dankemeyer filed a charge with the IDHR alleging violations of Title VII and IHRA by Defendant.

2

8. The IDHR issued to Defendant a Letter of Determination and a right to sue letter. **See Exhibit A**. Received by Plaintiff days later.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

### Plaintiff's Background and Professional Experience

10. Plaintiff, Brian Dankemeyer, is forty-six (46) year old male.

11. Plaintiff has more than sixteen (16) years of experience in the banking industry, as a BMO employee.

12. Throughout his career, Plaintiff has consistently demonstrated strong leadership, communication skills, and intellectual aptitude, earning the trust and respect of senior leadership and colleagues alike.

13. Plaintiff Brian Dankemeyer was hired by BMO Harris Bank ("BMO") on February 8, 2010, as a part-time teller at the New Berlin, Wisconsin branch.

14. Plaintiff's performance in interacting with customers was well-received. Within a few months of employment, Plaintiff's manager at the time, Nicholas Hansen, recommended that Plaintiff be promoted to Personal Banker.

15. Plaintiff was promoted to Personal Banker and transferred to the Franklin, Wisconsin branch.

16. In 2012, Plaintiff was promoted to Senior Premier Banker in Woodstock, Illinois, and later transferred to the Crystal Lake, Illinois branch.

17. During his tenure as a Senior Premier Banker, Plaintiff received recognition as a BMO trip winner due to his exemplary performance.

18. Plaintiff remained in this position for several years before receiving another promotion to Business Relationship Manager around 2017 in Lake Geneva, Wisconsin.

19. Plaintiff enjoyed the Business Relationship Manager position but later accepted a lateral move to Premier Banker in approximately 2021 to increase commission earnings and reduce commuting time.

20. While serving as Premier Banker, Plaintiff again achieved top performer recognition, including winning the top performer trip due to his success in that role.

21. Throughout Plaintiff's employment with BMO, he consistently received exceptional year-end performance reviews.

22. Around 2024, Plaintiff observed that the branch market president began experiencing issues with the Premier segment, resulting in an investigation.

23. Following the investigation, multiple bankers across various branches were terminated, causing operational disruptions in the affected branches.

24. Plaintiff's direct supervisor, Brandon Lutane, provided Plaintiff and other Premier Bankers with a CD maturing list of customers to contact for potential referrals to help branches recover lost business.

25. Some branches expressed concern that they were not given the opportunity to contact these customers first. Plaintiff was instructed by the head of Premier to stop calling the list to allow branches to contact customers initially.

26. Despite this instruction, Plaintiff continued to call customers on the CD maturing list because over 50% of bankers in his market were new hires, including two branches staffed entirely by new bankers.

27. Plaintiff received approval from his manager, Brandon Lutane, to continue calling the list and received positive feedback from branch managers for setting appointments and generating referrals.

28. Plaintiff experienced significant pressure from Lutane to continue assisting the team, as Lutane's bonuses were tied to the team's performance. Plaintiff's own goals were already met, but Lutane insisted he continue helping the team.

29. In January 2025, during a Premier Bankers "fireside chat" (a conference call with all Premier Bankers), Plaintiff spoke up to highlight the value to customers of notifying them about CD maturities.

30. Plaintiff's comments during the fireside chat were not well-received by senior management.

31. Shortly thereafter, while attending a Rockford Icehogs game with Lutane, Plaintiff was instructed to immediately stop calling the CD maturing list, which he complied with.

32. Following compliance with Lutane's instruction, BMO initiated the process to terminate Plaintiff.

33. Plaintiff was informed that his termination was due to prior calls to the CD maturing list and allegedly sending "unsolicited referrals" to bankers.

34. Plaintiff disputes these claims. All referrals were made with at least one account holder's knowledge, properly documented in notes, and no account was contacted without authorization.

35. At the time of termination, Plaintiff was 46 years old and the oldest member of his team.

36. Plaintiff believes that BMO sought to replace older employees with younger staff, as he was ultimately replaced by an employee in their 20s.

37. Shortly after Plaintiff's termination, Lutane left his position to accept another role. Plaintiff believes Lutane's departure was intended to avoid accountability in connection with Plaintiff's termination.

38. Plaintiff served BMO for over fifteen years, consistently demonstrating strong performance, achieving multiple promotions, and receiving recognition for excellence.

39. Despite Plaintiff's record of outstanding performance and contributions to BMO, he was terminated in 2025 under circumstances that he believes were wrongful.

## COUNT I – RETALIATION / WHISTLEBLOWER PROTECTION

40. Plaintiff engaged in protected activity under federal law by raising concerns regarding practices he reasonably believed were improper and contrary to the interests of BMO's customers. Specifically, Plaintiff expressed concerns that customers with maturing Certificates of Deposit ("CDs") were not being adequately informed of opportunities to maximize their returns, and that certain bank policies effectively prevented bankers from notifying customers for their financial benefit.

41. Plaintiff brought these concerns to the attention of management during company meetings, including a Premier Bankers "fireside chat" in January 2025, and through other internal channels. Plaintiff's complaints highlighted that withholding such information could benefit the bank at the expense of its customers, which he reasonably believed to be wrongful.

42. Plaintiff also raised concerns about the handling of referrals, noting that all referrals were properly documented, including which account holder had been contacted, ensuring transparency and compliance with bank procedures.

43. Plaintiff's internal complaints were made in good faith, consistent with BMO's stated policies and duties encouraging employees to report concerns, and were intended to protect the interests of BMO's customers.

44. Following Plaintiff's internal complaints, BMO subjected Plaintiff to adverse employment actions, including termination in 2025.

45. Plaintiff's termination was causally connected to his whistleblower activity, as BMO's stated reasons for termination—calling CD maturing lists and alleged unsolicited referrals—directly related to the activities about which Plaintiff had raised concerns.

46. As a direct and proximate result of BMO's retaliatory actions, Plaintiff has suffered, and continues to suffer, lost wages, lost benefits, emotional distress, and other damages in an amount to be determined at trial.

## COUNT II – WRONGFUL TERMINATION (RETALIATION IN VIOLATION OF PUBLIC POLICY)

47. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

48. Plaintiff was terminated despite a long history of strong performance, positive evaluations, promotions, and recognition as a top performer.

49. Plaintiff's termination was not based on legitimate performance issues but was instead pretextual and retaliatory in nature.

50. Plaintiff raised good-faith concerns internally regarding practices that he reasonably believed were improper, unethical, and harmful to customers, including restricting bankers from informing customers about maturing Certificates of Deposit and limiting customer outreach for the bank's financial benefit.

51. Plaintiff also complied with BMO's stated policies requiring employees to speak up and report concerns, which imposed an affirmative duty on employees to raise issues of potential misconduct.

52. After Plaintiff made these internal complaints and questioned these practices in January 2025, BMO terminated his employment.

53. The temporal proximity between Plaintiff's protected complaints and his termination supports an inference of retaliatory motive.

54. BMO's stated reasons for Plaintiff's termination were inconsistent, selectively enforced, and contradicted by management's prior knowledge and approval of Plaintiff's conduct.

55. Plaintiff's termination violated clearly established public policy protecting employees who report suspected wrongdoing and advocate for lawful, ethical treatment of customers.

56. As a direct and proximate result of BMO's wrongful termination, Plaintiff has suffered lost wages, lost benefits, emotional distress, and other damages in an amount to be proven at trial.

## COUNT III – AGE DISCRIMINATION
### (Federal – Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.)

57. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

58. Plaintiff was forty-six (46) years old at the time of his termination and was therefore a member of the protected class under the Age Discrimination in Employment Act ("ADEA").

59. Plaintiff was qualified for his position and consistently performed his job at a high level, as demonstrated by his promotions, awards, and performance reviews.

60. At the time of his termination, Plaintiff was the oldest member of his team.

61. BMO terminated Plaintiff's employment and replaced him with a substantially younger individual in their twenties.

62. During Plaintiff's tenure, BMO increasingly hired younger employees, while older, experienced employees were terminated or pushed out.

63. Age was a motivating factor and a "but-for" cause of Plaintiff's termination.

64. BMO's stated reasons for Plaintiff's termination were pretextual and used to mask discriminatory intent.

65. As a direct and proximate result of BMO's age discrimination, Plaintiff has suffered lost wages, lost benefits, emotional distress, and other damages recoverable under the ADEA.

**COUNT IV – AGE DISCRIMINATION**
**(State Law – Illinois Human Rights Act, 775 ILCS 5/1-101 et seq.)**

66. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

67. Plaintiff was over the age of forty (40) at all relevant times and was a member of a protected class under the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 et seq.

68. Plaintiff was qualified for his position and consistently met or exceeded BMO's legitimate performance expectations.

69. Plaintiff was the oldest member of his team at the time of his termination.

70. BMO terminated Plaintiff's employment and replaced him with a substantially younger employee in their twenties.

71. BMO's actions constituted discrimination on the basis of age in violation of the Illinois Human Rights Act.

72. As a direct and proximate result of BMO's unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, and other damages recoverable under Illinois law.

## DAMAGES

73. Plaintiff's termination caused significant emotional distress, humiliation, and loss of professional standing.

74. Being terminated at Plaintiff's age after a long and successful career was deeply traumatic.

75. Plaintiff has suffered lost wages, lost benefits, emotional pain, and damage to her reputation.

76. Plaintiff was proud to work for BMO and relied on Defendant's stated commitment to supporting employees of all ages, races, and genders.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests the following relief:

    a.    All damages allowed under the claims as set forth above;
    b.    Compensatory damages for monetary and non-monetary loss;
    c.    Prejudgment interest;
    d.    Costs;
    e.    Punitive Damages
    f.    Attorney's fees; and
    g.    Such other relief as in law or equity may pertain.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by its complaint.

DATED: January 26, 2026                    Respectfully Submitted,

10

By          /s/ Frank Avila

Frank Avila
7132 N. Harlem Suite 107
Chicago, Illinois 60631
FrankAvilaLaw@GMail.com
773-671-3480

11